(8 App. Div. 397)

## In re FORKEL.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

1. COMMITTEE OF LUNATIC—ACCOUNTING—JURISDICTION OF COUNTY COURT.
    On an application for a settlement of accounts, and for a discharge, made by the committee of a lunatic to the county court, which has co-ordinate jurisdiction with the supreme court over the persons and property of lunatics (Code Civ. Proc. §§ 340, 2320), and which has acquired jurisdiction over the persons interested in the estate in question, all claims presented by the committee should be disposed of on equitable principles, in order to avoid the expense of further litigation.

2. SAME—DISBURSEMENTS BEFORE APPOINTMENT.
    The committee of a lunatic should be allowed on his accounting for disbursements made before his appointment, where they were necessary and proper.

3. SAME—COSTS.
    The costs of an accounting by the committee of a deceased lunatic, of whose estate no administrator has been appointed, should be allowed out of the estate, though, as to some of the items claimed, the committee could only look to the personal representatives of the lunatic.

Appeal from Monroe county court.

Accounting by Christopher W. Forkel, as committee of William B. Forkel, a lunatic. From an order modifying the report of the referee theretofore appointed to take and state the accounts, the committee appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John R. Fanning, for appellant Christopher W. Forkel, committee, and others.

Frank J. Hone, for contestants and respondents, the heirs at law of William B. Forkel.

ADAMS, J. The record in this proceeding establishes the following facts, concerning which there seems to be little or no controversy: In the year 1879, William B. Forkel was, by proceedings duly instituted, declared a lunatic. At that time his family consisted of six children and a wife. Two of the children and his wife died in the year 1880, and shortly thereafter, by an arrangement

entered into between the relatives, two of the children, John M. Forkel and Christian J. Forkel, were taken into the family of their uncle, Christopher W. Forkel, by whom they were subsequently cared for and maintained. At this time these children were of the age of 10 and 8 years, respectively. Thereafter, and upon the 31st day of January, 1881, Christopher W. Forkel, who was the brother of William B. Forkel, was appointed the committee of the person and property of his brother, and he continued to act as such committee until the 9th day of November, 1890, when the latter departed this life, leaving an estate consisting of both real and personal property. The deceased left no will, and no administrator has been appointed of his estate. At the time of the death of William B. Forkel, the appellant, as his committee, was in possession of all of his brother's property, which possession he retained until July, 1894, when he petitioned the county court of Monroe county, asking for a settlement of his accounts and his discharge as such committee. Attached to his petition was a verified account of the receipts and expenditures of the petitioner as such committee. The children and heirs at law of the deceased lunatic challenged the correctness of such account, and interposed objections to a number of the items thereof. The matter was thereupon sent to a referee by an order of the Monroe county court, and subsequently the referee so appointed reported to the court that he had taken proof of the accounts, and, as a result of his investigation thereof, recommended that the committee be charged with the sum of $695.86, and credited with the sum of $1,509.67. The referee, in his report, found that the appellant, prior to his appointment as such committee, had advanced certain sums of money or paid certain claims against William B. Forkel, amounting in the aggregate to the sum of $440.31, for which he should be allowed credit; and he also recommended that he be credited with the cost of maintaining the two boys for the period of 80 weeks at $3 each per week, which amounted to the sum of $480. Upon the coming in of the report of the referee the county court disallowed all the charges or items of expenditure made by the appellant prior to the date of his appointment as such committee, and likewise disallowed the charge of $480 for the board of the two boys, John and Christian Forkel, and directed that the report of the referee in all other respects be confirmed, but denied to the committee his commissions or the disbursements of his accounting, unless, after making the deductions specified, there shall be found remaining in his hands funds available for that purpose. There is nothing in the record before us to indicate the reasons which influenced the county court to strike from the committee's account the items above referred to, but, it may, perhaps, be fairly inferred from what does appear that so much of such account as embraced expenditures made prior to the appointment of the appellant as committee was disallowed upon the ground that the expenditures were unauthorized, or that at most they constituted a claim against the estate of the deceased lunatic, which could not properly be settled upon the accounting of the committee, but one which must be presented to the administrator of his estate, in the event one is appointed; and we

likewise infer that the claim for the maintenance for the two minor children was disallowed for the reason that no express contract was entered into for their support, and that no facts were made to appear from which any agreement to pay therefor could be implied. At all events, upon the argument of the appeal, the learned counsel for the respondents assumed that the action of the court below must be sustained, if at all, upon some such grounds as those we have stated. After a careful review of the facts of the case from the standpoint thus indicated, we find ourselves unable to approve of the modification of the referee's report which the order appealed from directs. There can, of course, be no question but that, upon the death of the lunatic, the powers and duties of the committee were terminated; for such is the express provision of the statute. Code Civ. Proc. § 2344. And upon the happening of that event there was nothing left for the committee to do except to render an account of his proceedings, and dispose of the property remaining in his hands in the manner directed by the court. Killick v. Bank (Sup.) 1 N. Y. Supp. 501. In the present case, had there been an administrator of the estate of the lunatic, he could have cited the committee to render an account; or the committee, upon his own petition, could have asked for his discharge, with permission to turn over such property as might possibly remain in his hands to the administrator. But, inasmuch as no administrator had been appointed, the only thing which the committee could do was to apply to the court for his discharge, and give notice of such application to the heirs at law and next of kin of the deceased. This he did do, and upon the accounting all the parties interested in the estate were duly represented, and were furnished a full opportunity to examine into and criticise and oppose such of the items of the committee's account as they regarded objectionable.

The court to which this application was thus addressed having, co-ordinately with the supreme court, jurisdiction over the person and property of the lunatic (Code Civ. Proc. §§ 340, 2320), and having likewise obtained jurisdiction over the persons who were interested in this particular estate, it was manifestly proper that any claim which was presented by the committee should be disposed of upon equitable principles, and the expense and annoyance of further litigation thereby avoided. Boughton v. Flint, 74 N. Y. 476; Hyland v. Baxter, 98 N. Y. 610; In re Lofthouse, 3 App. Div. 139, 38 N. Y. Supp. 39. Strictly speaking, the claim for the maintenance of the children was one which had been incurred without any express authority. It was one, also, which existed in favor of the committee personally, and the disbursements made by the appellant prior to the date of his appointment as such committee were likewise in the nature of advances made by him for the support of his brother and his brother's family during a period of time when, confessedly, the brother was incompetent to care for himself, or those who were dependent upon him. There is no question, however, but that the disbursements thus made were necessary and proper; neither is any question raised as to the good faith of the appellant in making them; and we look in vain for any just criticism of the charge he has made

for the care and maintenance of the infant children.  Upon what principle of equity, then, should he be denied payment or reimbursement?  The court which acquires jurisdiction of persons incompetent to manage their own affairs is required, among other things, to provide for the payment of their debts out of their estate (Code Civ. Proc. § 2321); and we fail to see why a debt incurred prior to the appointment of a committee, even though it be in favor of the person so appointed, should not be treated with the same consideration as though it were one existing in favor of a stranger, which had been incurred in the administration of the estate.  In other words, we think the appellant's claim for advances made by him for the benefit of his brother, before he sustained the relation of trustee to him, and for whatever it was reasonably worth to support the two minor children, should have been allowed him upon his accounting in this proceeding, inasmuch as there is no denial that the advances were made and the children cared for, and nothing which in any wise impeaches the good faith or integrity of the appellant in the management of the estate committed to his charge.  Benedict v. Sliter, 82 Hun, 190–196, 31 N. Y. Supp. 413.  We are disposed, therefore, to sustain the referee in the statement of the committee's account rendered by him; and we are also of the opinion that the learned county court erred in the provision which it made respecting the commissions of the committee, and the disbursements incurred upon his accounting.  If we are justified by the facts, in the view which we have taken of this case, no good reason is furnished why he should be deprived of his commissions, or made to defray personally the expense of obtaining his discharge.  A very considerable portion of the account filed by him appears to have been disallowed by the referee, presumably, for the reason that it embraced expenditures made subsequent to the death of the incompetent; and for so much of his claim as arises from expenditures thus made he will, undoubtedly, because of the statute heretofore cited, be obliged to look to the personal representatives of the deceased for reimbursement.  This, we are inclined to think, is all the hardship and annoyance to which he ought, properly, to be subjected.  The order appealed from should therefore be reversed, and the report of the referee confirmed, and the order should provide that the commissions of the committee, the expense of his accounting, and the costs of this appeal should be a charge upon the estate of William B. Forkel.

Order reversed, and report of referee confirmed, with costs, to be paid by the estate.  All concur.

---

(8 App. Div. 427)

FIRST NAT. BANK OF BALDWINSVILLE v. CONNELL et al.

(Supreme Court, Appellate Division, Fourth Department.  July 30, 1896.)

CORPORATIONS—LIABILITY OF DIRECTORS—FAILURE TO FILE ANNUAL REPORT.
    A note received by a corporation in violation of Laws 1892, c. 688, § 42, which forbids a corporation to issue stock except for money, labor, or property, is nevertheless valid in the hands of a person who advanced money to the corporation on the faith of the note, and therefore the obli-