[L. A. No. 6368. Department One.—December 4, 1920.]

In the Matter of the Estate of THOMAS JASPER KELLEY, Incompetent.

[1] GUARDIAN AND WARD—DEATH OF WARD—DUTY OF GUARDIAN.—A guardian after the death of the ward is charged with the care and preservation of the property of the ward until he is legally discharged, but he has no power to dispose of any property of the estate.

[2] ID.—COMPENSATION OF GUARDIAN SUBSEQUENT TO DEATH OF WARD.—A guardian is not entitled to compensation for his services subsequent to the death of the ward beyond the time that he turned over from himself as guardian to himself as special administrator the property of the deceased ward.

APPEAL from an order of the Superior Court of Los Angeles County allowing compensation for services of guardian of an incompetent person. James C. Rives, Judge. Reversed.

The facts are stated in the opinion of the court.

Lucien Gray and Leon F. Moss for Appellants.

E. B. Coil for Respondent.

LAWLOR, J.—This is an appeal by A. W. Dewey, W. W. Sloss, and Luzetta Sanders, legatees and devisees under the will of Thomas Jasper Kelley, deceased, and by David Beeson, executor and trustee under said will, from a decree allowing respondent, R. L. Bocock, $1,650 for services ren-

dered by him as guardian of the person and estate of the said Kelley, incompetent.

On January 28, 1918, the respondent was appointed and qualified as guardian of the person and estate of Kelley, who had previously been adjudged incompetent. On April 22d, by order of court, it was determined that respondent was entitled to reasonable compensation at the rate of $150 per month for his services as guardian, and it was ordered that $150 per month be paid to him out of the funds of the estate "until further notice." Kelley died on August 29th, and on September 11th respondent was appointed and qualified as special administrator of his estate. Respondent filed his report of administration as guardian on September 13th, together with his first and final account, which contained *inter alia* this charge: "Aug. 28, Paid salary for services to R. L. Bocock, 6 mo. at $150.00, $900,00." Regarding this item, the respondent testified: "In my account . . . I have paid myself the allowance made, nine hundred dollars, being for the first six months of my services." August 1, 1919, the court made a decree settling the account. It is from the following portions of this decree that the present appeal is taken: "4th. The court further finds that heretofore it made an order allowing the said guardian the sum of $150 per month for services rendered as such guardian, and that such amount should continue until the further order of court; that such services have continued to the date of this order and that he is entitled to such compensation as such guardian to this time, namely, from the date of the last order; being for the month of August, 1918, amounting to the sum of $1,650, to be credited on said final account. . . . 6th. The said account should be and is hereby settled and allowed: . . . that he pay to himself as such guardian the sum of $1,650 in full of services rendered."

Appellants contend that the evidence does not justify an allowance of $1,650 to respondent for his services subsequent to Kelley's death. This position is thus set forth in their brief: "The court should not have allowed the guardian for services in excess of one month and one day, being the period from the time to which he had been paid in full up to the date of the death of the ward. The allowance should have been $155 and no more. Therefore, Mr. Bocock, as guardian,

CLXXXIV Cal.— 29

was erroneously awarded the sum of $1,495 for alleged services subsequent to the death of the ward."

[1] It is the well-established rule that after the death of the ward a guardian has no power to dispose of any property of the estate (*Estate of Livermore,* 132 Cal. 99, [84 Am. St. Rep. 37, 64 Pac. 113]). Until he is legally discharged, however, he is charged with the care and preservation of the property of the ward. (*Downing* v. *Whitney,* 46 App. Div. 307, [61 N. Y. Supp. 540]; Schouler on Domestic Relations, 5th ed., sec. 312; Spencer on Domestic Relations, sec. 786, 21 Cyc. 51.) But in the case at bar, respondent, testifying in his own behalf, stated that on September 11, 1918, he had "duly transferred and turned over from himself as guardian . . . to himself as special administrator . . . all the property and funds of said decedent and said estate; and that the cash belonging to said decedent had been by him deposited in the Guaranty Trust & Savings Bank . . . in his name as special administrator."

Thus the evidence shows that between January 28th, when respondent was appointed and qualified as guardian, and September 13th, when he turned over all the property of the estate to himself as special administrator, a period of seven months and sixteen days elapsed, during which he had the custody and control of said estate; that after the last-mentioned date respondent, while not yet legally discharged as guardian, nevertheless had nothing to do in that capacity with the property, and that, according to his first and final account, he had been paid for the first six months of his guardianship at the rate of $150 per month. [2] It follows necessarily, we think, that any further compensation to which respondent may be entitled for his services as guardian must be confined to compensation for the one month and sixteen days during which he had the care and custody of the estate and for which he has not as yet been paid.

It is urged by respondent that in fixing and determining the compensation to which he is entitled as special administrator the probate court has taken into consideration the fact that it had already allowed him compensation as guardian for the period from September 13, 1918, to August 1, 1919, and has therefore refused to allow him compensation for any duties performed by him as special administrator

during that period. Respondent argues from this that there is no possibility that he will be allowed double compensation. But it is a sufficient answer to this contention to point out that the probate proceedings are not now before us and that there is nothing in the record to support the statement of respondent to which we have just referred. We are concerned here only with the question whether the court was justified in awarding respondent the sum of $1,650 for his services *as guardian* after July 28, 1918, and in view of the conclusion we have reached that question must be answered in the negative.

The order is reversed, with directions to modify the allowance in accordance with the views herein expressed.

Shaw, J., and Olney, J., concurred.